**UNITED STATES of America,**

v.

**Rudy FRABIZIO, Defendant.**

**No. CRIM.03–10283–NG.**

United States District Court,
D. Massachusetts.

Oct. 27, 2004.

Dana M. Gershengom, U.S. Department of Justice, Washington, DC, for USA, Plaintiff.

Miriam Conrad, Federal Defender's Office, Dena T. Sacco, United States Attorney's Office, Boston, MA, Edwin T. Scallon, Scallon Law Associates, P.C., Taunton, Leo T. Sorokin, Federal Defender's Office, Boston, MA, for Defendant.

MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION FOR PRODUCTION OF DISCOVERY

GERTNER, District Judge.

I. *INTRODUCTION*

Before the Court is defendant Rudy Frabizio's ("Frabizio") motion for produc-

tion of discovery [docket entry # 44]. That motion is hereby **GRANTED**, subject to Frabizio's proposed protective order. Frabizio is charged with receiving and/or possessing child pornography. The government intends to offer at trial the expert testimony of Dr. Hany Farid ("Farid"), who claims to have created a mathematical programming code capable of determining whether electronic images of children are computer-generated or depict actual children. The defense has requested a *Daubert* hearing on Farid, which is scheduled for November 17, 2004. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). As part of that hearing, Frabizio has moved for production of copies of the images seized from Frabizio's computer. Frabizio also seeks the requested material to enable counsel to investigate how and when the images came to appear and be accessed on the computer. The government opposes producing copies of the images, arguing that making copies available for inspection at FBI facilities is sufficient. For the reasons stated below, defendant's motion is hereby **GRANTED**, subject to the protective order proposed by Frabizio. The government is ordered to produce the requested discovery on or before November 5, 2004.

## II. *BACKGROUND*

Frabizio is charged with receiving and/or possessing approximately 33 images of alleged child pornography, all of which were stored electronically on the hard drive of his work computer. After the FBI seized the hard drive, they made a "bit stream" copy of all electronically-stored data on the hard drive. Both the hard drive and the copy are being held by the FBI.

On August 25, 2004, FBI agents took this copy to the United States' expert, Dr. Hany Farid, along with additional images of adult and child pornography unrelated to this case. Farid first analyzed the unrelated pornographic images brought by the FBI, then analyzed the images seized from Frabizio's hard drive. All of the images Farid analyzed were brought to him on CDs; none of the images were transferred to Farid's computer or other equipment. The government states that the images remained in the custody of the FBI at all times.

Frabizio has moved for production of an image of the hard drive, as well as all "Encase" files.[1] He has also requested copies of all images Farid used to test his programming code, including the images analyzed on August 25, 2004. The government has produced Farid's programming code; the 46,000 images he used to train the code; and the images of adult pornography that the FBI took to Farid on August 25, 2004. The government has refused to produce any images it believes to be child pornography. The government has, however, made these images available for inspection at an FBI facility.[2]

The issue that must be resolved, then, is whether the government should be required to produce a copy of the images to the defense, or whether its offer to make the images available for viewing at the FBI building is sufficient.

## III. *LEGAL ANALYSIS*

Frabizio makes his discovery request under Federal Rule of Evidence

---

1. In *United States v. Hill*, 322 F.Supp.2d 1081, 1091 (C.D.Cal.2004), the court describes "Encase" files as a type of forensic software.

2. The government does not specify the location of this FBI facility.

16(a)(1)(E), which requires the government to:

> permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>> (i) the item is material to preparing the defense;
>> (ii) the government intends to use the item in its case-in-chief at trial; or
>> (iii) the item was obtained from or belonged to the defendant.

As Frabizio notes, the requested images are discoverable under each of Rule 16's categories, though Rule 16(d) authorizes limitations on discovery for "good cause."

Frabizio states that the government's proposal will hinder his defense. He notes that his expert, Devin Hosea, intends to reconstruct the software process used by Farid. Hosea then plans to run his own tests on those images. Hosea has submitted an affidavit to the Court detailing the equipment his analysis will require (a computer, an operating system, middleware known as "Matlab," and Farid's software) and estimating that he will need approximately 16 hours to conduct his tests. Hosea states in his affidavit that he lives in New Jersey and that making repeated trips to the FBI location will be burdensome.

Frabizio also contends that requiring the defense to conduct these tests at the FBI facility would make confidentiality impossible. First, Frabizio submits that the government's proposal prevents defense counsel from consulting freely with her expert. Second, and more importantly, any tests conducted on an FBI computer will leave behind a roadmap of the process and its results on that computer's hard drive. In his affidavit, Hosea notes that, while the government has produced the final results of the Farid analysis, intermediate steps and any false negatives that may have been generated were not produced.

Frabizio has submitted a proposed protective order, modeled on the order entered in *United States v. Hill*, 322 F.Supp.2d 1081, 1091 (C.D.Cal.2004), which is discussed in more detail below. That order would limit inspection of the images to defense counsel and her expert and would prohibit their dissemination. In addition, the proposed order would prohibit examination of the images on any computer connected to any network of computers or the Internet. In his affidavit, Hosea states that he would abide by the proposed order if it were adopted by the Court.

The government responds that Frabizio essentially argues that it will be inconvenient for his counsel and expert to examine the images at the FBI facility. The government contends that inconvenience does not justify risking further dissemination of contraband or "the re-victimization [through repeated viewing] of the children depicted."

The government also asserts that most courts that have considered similar defense motions have denied them. In *United States v. Kimbrough*, the Fifth Circuit stated that "[c]hild pornography is illegal contraband" and declined "to find that Rule 16 provides [that] such contraband can be distributed to, or copied by, the defense." 69 F.3d 723, 731 (5th Cir.1995). Rather, the court characterized the government's offer to make the images available for inspection "reasonable." *Id.* Similarly, in *United States v. Horn*, the Eighth Circuit upheld the trial court's denial of a Rule 16 motion. 187 F.3d 781, 792 (8th Cir.1999) ("We think that the restriction that the trial court imposed here, given the

fact that the tapes were *prima facie* contraband, was authorized by the relevant rule."). *See also United States v. Husband,* 246 F.Supp.2d 467, 469 (E.D.Va. 2003) (finding that the government fulfilled its obligations under Rule 16 by allowing access to the pornographic videotape in a private viewing facility); *United States v. Cox,* 190 F.Supp.2d 330, 334 (N.D.N.Y. 2002) (denying defendant's motion for a protective order requiring the government to provide him with copies of the seized pornographic materials).

Frabizio points to two cases in which such motions have been granted. The first is a case from New Hampshire district court, in which the motion was allowed in an unpublished opinion.[3] The second case, however, provides a well-reasoned opinion that I find far more compelling than those cited by the government. In *United States v. Hill,* 322 F.Supp.2d 1081, 1091 (C.D.Cal.2004) (Kozinski, J., sitting by designation), defendant requested copies of the "1,000 images of child pornography and/or child erotica" that the government intended to introduce in evidence. The government refused to produce the copies, "argu[ing] that since child pornography is contraband, defense counsel and his expert should be required to examine the images in the controlled environment of the government facility." *Id.*

The court disagreed, finding that "defendant will be seriously prejudiced if his expert and counsel do not have copies of the materials." *Id.* The court noted that the defense expert planned to conduct "an in-depth analysis" that could not be completed in a single visit to the FBI lab.[4] *Id.* at 1091–92. Because the defense expert was located in another state, the court found that requiring multiple trips to the FBI lab would be "unreasonably burdensome." *Id.* at 1092. Furthermore, the government's proposed alternative of allowing analysis in the FBI lab was "inadequate" because "[t]he defense expert needs to use his own tools in his own lab." *Id.*

The court also eschewed the government's reliance on *Kimbrough* and *Horn.* In those opinions, the circuit courts did not hold that the district courts were *required* to reject the defendant's motion. Rather, they simply held that the district courts had not abused their discretion by doing so. Indeed, in both cases, the courts found that defendants failed to present compelling arguments as to any prejudice they suffered as a result of the district courts' rulings. *Kimbrough,* 69 F.3d at 731; *Horn,* 187 F.3d at 792 ("In a proper case, and perhaps after a sufficient preliminary showing, such a rationale [as defendant raised for the first time on appeal] might well have required the trial court to grant Mr. Horn's discovery motion.").[5]

---

**3.** The order was entered by Magistrate Judge Muirhead in *United States v. Syphers,* Cr. 03–112–01–JD.

**4.** Though the government has not analogized the pornography in this case to guns or drugs, the court's rejection of this analogy is worth noting: "Analysis of a narcotics sample is a fairly straightforward, one-time event, while a thorough examination of the thousands of images on the zip disks will take hours, even days, of careful inspection and will require the ability to refer back to the images as the need arises." *Id.* at 1091. Furthermore, as Frabizio points out in his reply to the govern-

ment's opposition, even drugs are sometimes ordered produced for independent testing. *See, e.g., United States v. Pollock,* 402 F.Supp. 1310 (D.Mass.1975); *United States v. Noel,* 708 F.Supp. 177 (W.D.Tenn.1989).

**5.** As Frabizio notes in his reply to the government's opposition, reliance on *Cox* is inapposite for similar reasons. In *Cox,* defendant provided "no factual basis for his assertion that physical possession of the government's evidence is necessary." *Cox,* 190 F.Supp.2d at 334. Frabizio argues that he, in contrast, has asserted a factual basis for his request.

Finally, the court stated that there was no reason to believe that defense counsel or the expert could not be trusted with the material. *Id.* at 1092. The court entered a protective order agreed upon by the parties, which Frabizio has proposed that this Court adopt as well.

The government argues that the facts of *Hill* are distinguishable from those of the present case. First, the government notes that the *Hill* case involved over 1,000 images, while the present case involves only 33. *See id.* at 1091. As Frabizio contends, however, Hosea must not only analyze these 33 images, but must also reconstruct the analysis conducted by Farid. To say that Hosea need only analyze 33 images is not, therefore, an accurate representation of the amount of work that he must do. Second, the government maintains that the *Hill* court heavily emphasized the fact that the defense expert was a former government agent who had experience in dealing with child pornography. *See id.* at 1092. While the government is correct that the *Hill* court noted the expert's law enforcement experience, it is inaccurate to contend that the court placed great weight on that fact. More compelling is the fact that here, as in *Hill,* there is no reason to think that defense counsel or her expert cannot be trusted to abide by the proposed protective order. It cannot be said—at least credibly—that the only defense counsel and experts to be trusted are those who were formerly employed by the government.

The facts of *Hill,* then, are more similar than dissimilar to those of the present case. Furthermore, the government's concerns about the risk of further dissemination are adequately addressed by the proposed protective order, and the government's concern about re-victimization will be implicated regardless of where defense counsel and her expert view the images.

Frabizio's motion, therefore, is **GRANTED** and his proposed protective order is hereby **ADOPTED.**

## IV.  *CONCLUSION*

For the foregoing reasons, defendant's motion for proposed discovery [docket entry # 44] is **GRANTED** and defendant's proposed protective order is **ADOPTED.** The government shall produce the requested discovery on or before November 5, 2004.

**SO ORDERED.**