06-4946-cr
USA v. Rivera

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2007

(Argued: April 22, 2008      Decided: October 15, 2008)

Docket No. 06-4946-cr

- - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

                Appellee,

        - v.-

CARLOS F. RIVERA, a.k.a.
CHAVIN1970, a.k.a. LATIN RICAN 70,

                Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - -x


     Before:      JACOBS, Chief Judge, KEARSE, KATZMANN,
                  Circuit Judges.

     Carlos Rivera appeals from a judgment convicting him of five counts involving the sexual abuse of children, entered following a jury verdict in the United States District Court for the District of Connecticut (Kravitz, J.).  On appeal, Rivera challenges (inter alia) the sufficiency of the evidence on his conviction for production of child pornography, arguing that certain photographs were not

"lascivious" within the meaning of the child pornography laws.  We affirm.

MARJORIE M. SMITH, Piermont, NY, for Defendant-Appellant.

ERIC J. GLOVER, New Haven, CT (Kevin J. O'Connor, United States Attorney, District of Connecticut, on the brief, William J. Nardini, of counsel), for Appellee.

DENNIS JACOBS, Chief Judge:

Carlos Rivera appeals from a judgment of conviction entered on October 24, 2006, in the United States District Court for the District of Connecticut (Kravitz, J.), following a jury trial at which he was found guilty of charges involving sexual exploitation of children.  Those charges included coercion and enticement to sexual conduct, travel with intent to engage in such conduct, and the possession and production of child pornography.  As a recidivist, Rivera was sentenced to a mandatory term of life imprisonment on the conviction for producing child pornography.  Two issues presented on appeal (misjoinder of the offenses against the minor named Brian, and sentencing) are controlled by established precedent and are addressed briefly below.

We write primarily to consider the District Court's jury instruction on the meaning of "lascivious" for purposes of 18 U.S.C. § 2256(2)(A)(v). Rivera contends that his photographs of a naked 16-year old male on a bed do not satisfy the statutory definition.

## BACKGROUND

The evidence showed a pattern of predatory conduct. Rivera met boys in Internet chat rooms, exchanged sexually explicit messages and photographs with them, and arranged to meet them for illicit sexual encounters. During one such encounter, Rivera created the photographs that ground his conviction for production of child pornography.

Four of Rivera's victims testified at trial, as follows in our brief and bowdlerized summary.[1]

Brian told Rivera that he was twelve years old and lived in Nebraska. After some months of online chats about sex (including explicit video images of Rivera), Brian disclosed that his family was taking a trip to Washington, D.C. Rivera drove from his Connecticut home, checked into

---

[1] Because the victims of Rivera's crimes were minors, only their first names were given at trial.

the hotel where Brian and his family were staying, and enticed Brian to his room for sex--posting notes with his screen name on a trail to his room, giving Brian a room-key (which Brian hid from his parents and then returned), confronting Brian in the lobby (with his parents nearby), and leaving his room door ajar. **GSA-11.** When Brian appeared, they engaged in oral and anal sex. **GSA-14.** By that time, Brian was thirteen years old.

Garrett told Rivera that he was fifteen years old (in fact, he was fourteen). Rivera engaged Garrett in explicit online chats, and arranged an encounter near their homes in Connecticut. Garrett bicycled to a hotel near his house where Rivera had suggested that they meet. When they were unable to get a room, Garrett declined to accompany Rivera to his house. A week later, they met in the woods outside Garrett's house, where they had anal sex. **GSA-57.** Garrett asked Rivera to buy him a paintball gun for his birthday. When Garrett sought to disengage, Rivera threatened to tell all to Garrett's mother; Garrett threatened to call the police. **GSA-61.**

David was sixteen years old when he met Rivera online. David agreed to meet Rivera for sex, and Rivera arrived

4

around midnight at David's home in Massachusetts. David sneaked out while his parents slept and went to a hotel with Rivera. After the two showered together, Rivera took several photographs of David lying naked on the hotel bed. David testified that Rivera "suggested a few positions" and that he "complied." **GSA-65.** Six of the photographs were introduced at trial to evidence Rivera's production of child pornography. After oral and anal sex, Rivera drove David home. **GSA-67.**

When Michael was sixteen, he and Rivera had online chats about sex and exchanged photographs of themselves, clothed and unclothed. Michael testified that after he refused to meet Rivera for sex, "he blackmailed me and said he was going to send those pictures that I sent him to another student that goes to my school." **GSA-71.**

Rivera was captured by the police after Brian's mother found an incriminating note. A state trooper, posing as Brian, engaged Rivera in an Internet chat about what had transpired between them. When he was arrested, Rivera declined to sign a form attesting that he had waived his Miranda rights; however, he agreed to be interviewed by the authorities for two hours. At trial, the arresting police

detective testified that during the interview, Rivera admitted to having had sex with Brian, who he thought "looked young." **GSA-45-46.**

A special agent of the FBI testified to the contents of Rivera's laptop computer, which included between 2,000 and 3,000 photographs of minors engaged in sexually explicit conduct, including the pictures Rivera took of David and photographs of Garrett and Michael that they had sent him; a chart detailing Rivera's sexual encounters (which listed both Garrett and Brian);[2] the record of an online chat in which Rivera gloated about having had sex with several boys (including Garrett and Brian); and a template blackmail letter threatening to tell a minor's parents that their child is gay unless the minor agreed to make a pornographic video with Rivera and to continue having sex with him.[3]  The

_____

[2] The chart gathered data under the following headers: name, age, year, virgin (Y or N), and "fucked" (number of times).  The government also introduced a handwritten version of the same chart.

[3] The template, saved under file name "BlackMail.doc," stated:

> Hey _____ I decided to blackmail you. U WILL have sex with ME in real LIFE, again, and you WILL let me make a PORN video with you. IF you don't do as I say and let me do what I want, I'll write to your PARENTS at this address _____

6

government also introduced into evidence records of the emails and online chats Rivera had exchanged with Brian, Garrett, David and Michael.

The jury convicted Rivera on all five counts: two counts of coercion and enticement, in violation of 18 U.S.C. § 2422(b), one count of travel with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b), one count of production of child pornography, in violation of 18 U.S.C. § 2251(a), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). In special interrogatories accompanying the verdict on count four (for production of child pornography), the jury identified four of the photographs of David as visual depictions of sexually explicit conduct (a phrase explained in the District Court's jury charge), and therefore child pornography.

The District Court imposed concurrent sentences of: 480

And I will let them know that you are GAY. I will also send them info about your online "activities" "chats" and will also tell them where they can find more info/ NOTE: IF you banish [sic] from online without giving in to my demands I will still do what I just said above. U can't hide, U will be the loser.

7

months' imprisonment on counts one and two; 480 months' imprisonment on count three; the mandatory term of life imprisonment on count four; and 240 months' imprisonment on count five. The District Court also imposed mandatory and discretionary restitution for the victims' losses, including their psychiatric treatment and care.

## DISCUSSION

Rivera argues that his photographs of David do not constitute child pornography, that is, that the evidence was insufficient for a conviction on count four; in the alternative, he contends that the jury was misled by the District Court's instructions. Rivera also challenges the District Court's denial of his motion to sever the counts relating to Brian from the counts relating to his other victims. Lastly, Rivera challenges his sentence on constitutional grounds.

## I

It is illegal to entice or coerce a minor to engage in "sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a).

8

"[S]exually explicit conduct" is defined to include the "lascivious exhibition of the genitals or pubic area of any person."  Id. § 2256(2)(A)(v).

The term "lascivious" is not self-defining.  See United States v. Villard, 885 F.2d 117, 121 (3d Cir. 1989) ("Whatever the exact parameters of 'lascivious exhibition,' we find it less readily discernable than the other, more concrete types of sexually explicit conduct listed in section 2256(2)."); United States v. Hill, 322 F. Supp. 2d 1081, 1084 (C.D. Cal. 2004) ("Lasciviousness is an elusive concept, and courts have struggled to develop a test for identifying it." (footnote omitted)).  But see United States v. Frabizio, 459 F.3d 80, 85 (1st Cir. 2006) ("The statutory standard needs no adornment.").  The dictionary definition[4] is of little help in drawing lines.

The leading case is United States v. Dost, 636 F. Supp. 828 (S.D. Cal. 1986), aff'd sub nom. United States v. Wiegand, 812 F.2d 1239 (9th Cir. 1987).  There, district judge Thompson enumerated six factors that "the trier of fact should look to . . . among any others that may be

---

[4] "Given to or expressing lust; lecherous" or "[e]xciting sexual desires; salacious."  The American Heritage Dictionary of the English Language (4th ed. 2006).

9

relevant in the particular case." Id. at 832. The "Dost factors" are:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> 4) whether the child is fully or partially clothed, or nude;
>
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
>
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

Id.

Here, the District Court charged the jury as follows, using the Dost factors:

> The term lascivious exhibition means a depiction which displays or brings to view to attract notice to the genitals or pubic area of minors in order to excite lustfulness or sexual stimulation in the viewer.
>
> Not every exposure of the genitals or pubic area constitutes a lascivious exhibition. In deciding whether a particular depiction constitutes a lascivious exhibition

10

> which displays or brings to view to attract notice to the genitals or pubic area of minors in order to excite lustfulness or sexual stimulation in the view, you should consider the following questions . . . .

**A-70.** The court then described the <u>Dost</u> factors.

Rivera presses two arguments on appeal: first, that the photos of David taken by Rivera do not fit the parameters of the <u>Dost</u> factors, <u>i.e.</u>, that the evidence was insufficient to support a conviction under the jury charge that was delivered; and second, that the <u>Dost</u> factors themselves are infirm, and have been criticized by many courts.

**A**

A defendant challenging the sufficiency of the evidence "bears a heavy burden." <u>United States v. Griffith</u>, 284 F.3d 338, 348 (2d Cir. 2002). "Not only must the evidence be viewed in the light most favorable to the government and all permissible inferences drawn in its favor, but if the evidence, thus construed, suffices to convince any rational trier of fact of the defendant's guilt beyond a reasonable doubt," the conviction must stand. <u>United States v. Martinez</u>, 54 F.3d 1040, 1042 (2d Cir. 1995) (internal citation omitted).

11

A reasonable jury could--and did--find that the four photographs depict the lascivious exhibition of a minor's genitals. The images all show David lying naked on a hotel room bed, his genitals prominent at or about the center of the frame. Two of the photographs depict David looking directly at the camera: in one, David is lying on his chest, his upper body raised on his elbows, while he looks over his left shoulder toward the camera; in another, David lies on his back, the right side of his body resting on his right elbow.

Although the Dost factors are not definitional, they are useful for assessing the sufficiency of evidence, and pose questions that are (at least) germane to the issue of lasciviousness. Here, all four photographs arguably satisfy several Dost factors: a bed is "generally associated with sexual activity," Dost, 636 F. Supp. at 832, and so is the pose, lying down with legs spread; the subject is naked; one photo, in which the subject's head is turned to an unseen observer (the photographer) suggests sexual encounter; and the genital area is the focal point. Finally, these images have context that reinforces the lascivious impression. David testified that Rivera arranged the poses and took the

12

photographs.  Rivera was responsible for the mise-en-scène.

A reasonable jury could therefore find that Rivera composed the images in order to elicit a sexual response in a viewer-

-himself.  These images are unquestionably "lascivious" material, the production of which Congress intended to crmiinalize.

**B**

"We review de novo the propriety of jury instructions." United States v. Naiman, 211 F.3d 40, 50 (2d Cir. 2000).  "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law."  United States v. Walsh, 194 F.3d 37, 52 (2d Cir. 1999) (internal quotation marks omitted).  The government argues that we should review for plain error because Rivera did not object to the jury instructions on the precise ground he argues on appeal.  We need not resolve that issue, however, because we affirm the District Court's jury instruction as an accurate statement of the law.

As Rivera argues, use of the Dost factors has provoked misgivings.  See, e.g., Frabizio, 459 F.3d at 88 ("[T]he Dost factors have fostered myriad disputes that have led

13

courts far afield from the statutory language. . . . [T]here is a risk that the Dost factors will be used to inappropriately limit the scope of the statutory definition."); Hill, 322 F. Supp. 2d at 1085 ("While the Dost factors attempt to bring order and predictability to the lasciviousness inquiry, they are highly malleable and subjective in their application."). But see Villard, 885 F.2d at 122 ("[T]he Dost factors provide specific, sensible meaning to the term 'lascivious,' a term which is less than crystal clear.").

Tellingly, nearly all of the Dost-factor critics have lined up behind an argument that is of no help to Rivera. Their underlying concern is that the factors sweep too narrowly, i.e., that "[t]he standard employed by the district court was over-generous to the defendant . . . ." Wiegand, 812 F.2d at 1239 (emphasis added); see also Frabizio, 459 F.3d at 88 (expressing concern that "the Dost factors will be used to inappropriately limit the scope of the statutory definition"); United States v. Wolf, 890 F.2d 241, 245 & n.6 (10th Cir. 1989) ("We do not hold that more than one Dost factor must be present to constitute a violation of 18 U.S.C. § 2251(a)."). However, this case

14

offers no occasion for considering the circumstances, if any, in which the Dost factors might prove too "generous" to defendants, an issue the Government does not press on appeal.

Much criticism has focused on the fifth Dost factor, which asks "whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity." Dost, 636 F. Supp. at 832. On direct appeal in Dost, the Ninth Circuit considered that inquiry "over-generous to the defendant in implying as to the 17-year-old girl that the pictures would not be lascivious unless they showed sexual activity or willingness to engage in it." Wiegand, 812 F.2d at 1244. To that court, the factor looked the wrong way-- "lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or likeminded pedophiles." Id. The court implied that a simpler, more subjective test was called for: "the pictures were an exhibition," and the "exhibition was of the genitals"; "[i]t was a lascivious exhibition because the photographer arrayed it to suit his peculiar lust." Id. Several other courts have concurred in this critique. See,

e.g., Frabizio, 459 F.3d at 89 ("The absence of a sexual come-on . . . does not mean that an image is not lascivious . . . . Children do not characteristically have countenances inviting sexual activity, and the statute does not presume that they do."); United States v. Wolf, 890 F.2d 241, 245 (10th Cir. 1989) ("[T]he Ninth circuit clearly stated that to violate 18 U.S.C. § 2251 the photographer need not portray the victimized child as a temptress.  We agree with the Ninth Circuit's interpretation of the statutory language."); Hill, 322 F. Supp. 2d at 1086 ("Almost any facial expression--or lack thereof--could fairly be described as one of these. . . .  Not much help here.").  Of course an innocent child can be coaxed to assume poses or expressions that bespeak sexual availability when viewed by certain adults, resulting in an image that "suggests sexual coyness or a willingness to engage in sexual activity" regardless of the child's own characteristics.

The sixth Dost factor has also been criticized.  It asks "whether the visual depiction is intended or designed to elicit a sexual response in the viewer."  Dost, 636 F. Supp. at 832.  See, e.g., Doe v. Chamberlin, 299 F.3d 192, 196 (3d Cir. 2002) ("The final Dost factor simply puts again

16

the underlying question: Is the exhibition lascivious?");

Hill, 322 F. Supp. 2d at 1086 ("This factor has no independent force."). The First Circuit has labeled it "the most confusing and contentious of the Dost factors," suggesting that it invites more questions than it answers:

> Is this a subjective or objective standard, and should we be evaluating the response of an average viewer or the specific defendant in this case? Moreover, is the intent to elicit a sexual response analyzed from the perspective of the photograph's composition, or from extrinsic evidence (such as where the photograph was obtained, who the photographer was, etc.)?

United States v. Amirault, 173 F.3d 28, 34 (1st Cir. 1999). After all, if the sixth factor were to focus on the defendant's "subjective reaction" to the photograph, as opposed to the photograph's "intended effect," "a sexual deviant's quirks could turn a Sears catalog into pornography." Id.; see also Wiegand, 812 F.2d at 1245 ("Private fantasies are not within the statute's ambit."). The First Circuit has further questioned whether the inquiry should be limited to "the four corners of the image" or extend to evidence of the sexual exploitation involved in making the image. Frabizio, 459 F.3d at 89-90; see also Amirault, 173 F.3d at 34 (expressing doubt that a fact-

17

finder should consider "the context surrounding the creation and acquisition of the photograph").

The Third Circuit has resolved the objection as follows:

> We must . . . look at the photograph, rather than the viewer. If we were to conclude that the photographs were lascivious merely because [the defendant] found them sexually arousing, we would be engaging in conclusory bootstrapping rather than the task at hand--a legal analysis of the sufficiency of the evidence of lasciviousness.

Villard, 885 F.2d at 125. So, to that court, "rather than being a separate substantive inquiry about the photographs," the sixth Dost factor "is useful as another way of inquiring into whether any of the other five Dost factors are met." Id.

Some of this criticism is mitigated once one distinguishes between the production of child pornography and possession. In Dost, the defendants were charged with having produced child pornography. It was thus logical for the Ninth Circuit to hold that the pictures were "a lascivious exhibition because the photographer arrayed it to suit his peculiar lust." Wiegand, 812 F.2d at 1244. It is a point of distinction that the defendants in Amirault, Villard and Frabizio were charged with having possessed (or

18

transported) child pornography; there was no allegation that they located the victims, arranged or posed the scenes, or otherwise produced the visual depiction. The sixth Dost factor is not easily adapted to a possession case.

Similarly, the Dost factors are arguably of diminished utility for purposes of Fourth Amendment analysis. See Hill, 322 F. Supp. 2d at 1086-87 (advocating for test dictating that "[i]f an image of a minor displays the minor's naked genital area, there is probable cause to believe that the image is lascivious unless there are strong indicators that it is not lascivious" (footnote and emphasis omitted)). That concern is not implicated here.

Notwithstanding valid criticisms and cautions about the Dost factors, we see no error in the jury charge given by the District Court.

Congress chose the word "lascivious," which has to do generally with sexual arousal. Although the statute is not unconstitutionally vague, see United States v. X-Citement Video, Inc., 513 U.S. 64, 78-79 (1994); United States v. Freeman, 808 F.2d 1290, 1292 (8th Cir. 1987), jurors (and judges) need neutral references and considerations to avoid decisions based on individual values or the revulsion

potentially raised in a child pornography prosecution.  As a definition of the word "lascivious," the Dost factors are imperfect and vulnerable to criticism.  But they are not definitional--nor do they purport to be.  Dost recommends that "the trier of fact should look to" the six enumerated factors, but noted that "others . . . may be relevant in the particular case."  Dost, 636 F. Supp. at 832.  And here, Judge Kravitz said that the jury "should consider" the factors--not that the factors determine the question.  They are not mandatory, formulaic or exclusive.  As factors, they mitigate the risk that jurors will react to raw images in a visceral way, rely on impulse or revulsion, or lack any framework for reasoned dialogue in the jury room.  In short, the Dost factors impose useful discipline on the jury's deliberations.  They may do so imperfectly, but they have not been much improved upon.

We need not decide whether the Dost factors would govern in every case that touches on child pornography.  Among other things, it matters whether production or possession is the charge.  But it is no error for a district court to recommend the Dost factors as considerations, making any adaptations or allowances warranted by the facts

and charges in a particular case. That said, the jury should not be made to rely on the <u>Dost</u> factors with precision to reach a mathematical result, or to weigh or count them, or to rely on them exclusively.

**II**

Rivera argues that the District Court erred in denying his motion to sever counts two (enticement of Brian) and three (interstate travel relating to Brian) from counts one (enticement of Garrett), four (production of child pornography depicting David) and five (possession of child pornography). Rivera contends that joinder of these five charges was improper under Federal Rule of Criminal Procedure 8(a), or in the alternative, that the District Court abused its discretion in declining to sever the charges under Rule 14(a).

"Our scrutiny of the district court's denial of a Rule 8 motion to sever requires a twofold inquiry: whether joinder of the counts was proper, and if not, whether misjoinder was prejudicial to the defendant." <u>United States v. Ruiz</u>, 894 F.2d 501, 505 (2d Cir. 1990). Rule 8(a) allows for the joinder of offenses that "are of the same or similar

21

character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "Similar" charges include those that are "somewhat alike," or those "having a general likeness" to each other. United States v. Werner, 620 F.2d 922, 926 (2d Cir. 1980) (quoting the dictionary). Counts that have a "sufficient logical connection" to each other can be tried together, Ruiz, 894 F.2d at 505, as can those "where the same evidence may be used to prove each count," United States v. Blakney, 941 F.2d 114, 116 (2d Cir. 1991).

Federal Rule of Criminal Procedure 14(a) provides that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). We review the denial of a motion under this rule for abuse of discretion, and do not reverse "unless the defendant demonstrates that the failure to sever caused him 'substantial prejudice' in the form of a 'miscarriage of justice.'" United States v. Sampson, 385 F.3d 183, 190 (2d Cir. 2004) (quoting Blakney, 941 F.2d at

22

116) (other internal quotations omitted).

The joinder was proper. Counts one, two, three and four share a "general likeness" in terms of the conduct and events alleged: over a four-month period, Rivera targeted Brian, Garrett, Michael, David in Internet chat rooms; exchanged sexually explicit messages and photographs with them; and enticed them to meet for illicit sexual encounters. During one of those encounters, Rivera took the photographs that form the basis of count four. And some of the same exhibits were used to prove counts one, two and three: the dossiers Rivera maintained of his sexual experiences, which listed Garrett and Brian; and the transcript of an Internet chat in which Rivera said that he had abused five boys, including Garrett and Brian. As to count five (possession of child pornography), we agree with the Eleventh Circuit that "child molestation and child pornography . . . plainly represent acts of 'similar character' involving the extraordinary mistreatment of children." United States v. Hersh, 297 F.3d 1233, 1242 (11th Cir. 2002). Accordingly, the five counts were properly joined.

Rivera fails to demonstrate that he suffered prejudice

from the joinder.  Rivera posits a prejudicial "spillover" because the government introduced evidence that Rivera had issued threats to some of his victims and suggested (in summation) that Rivera's photographs of David were lascivious due to Rivera's general prurient interest in young males.  Rivera contends that, in denying his motion, the District Court overlooked the likelihood that the jury would be "profoundly influenced . . . by the cumulative effect of evidence relating to distinct offenses in its assessment of whether the government had met its burden of proof on any one charge."  **Blue 18.**[5]

This generalized claim of prejudice is insufficient.  The District Court instructed the jury to "consider each count separately and return a separate verdict of guilty or not guilty for each" of them, **A-51,** and that its verdict "must be unanimous as to each charge," **A-84.**  More

---

[5] In the District Court, Rivera asserted that joinder would prejudice his right to testify on certain counts but not on others.  **A-18.**  He has forfeited that argument on appeal, relying instead on the broader concern expressed in United States v. Werner, 620 F.2d 922 (2d Cir. 1980), that "the jury may use the evidence cumulatively; that is, that although so much as would be admissible upon any one of the charges might not have persuaded them of the accused's guilt, the sum of it will convince them as to all."  Id. at 929 (quoting United States v. Lotsch, 102 F.2d 35, 36 (2d Cir. 1939) (Learned Hand, J.).

24

particularly, Federal Rule of Evidence 414 provides that "[i]n a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant." Fed. R. Evid. 414(a). The same rule defines "child" as a person below the age of fourteen. Id. 414(d). As a consequence, proof as to counts two and three (relating to Brian, age thirteen) would likely have been admissible as to the three other counts. The Federal Rules of Evidence thus specifically sanction the kind of showing that Rivera says is impermissible and conducive to spillover. The District Court did not violate Rule 8(a) and did not abuse its discretion under Rule 14(a).

**III**

Rivera challenges his sentence as cruel and unusual, in violation of the Eighth Amendment. Since Rivera failed to raise this claim in the District Court, we deem it forfeited. United States v. Feliciano, 223 F.3d 102, 125 (2d Cir. 2000) ("There is no reason why [the defendant's]

25

constitutional challenges could not have been raised below, where he had ample opportunity to raise them and where the district court would have had the opportunity to address them.").

In any event, Rivera's forfeited constitutional claim is without merit. "The Eighth Amendment 'forbids only extreme sentences that are "grossly disproportionate" to the crime.'" United States v. Yousef, 327 F.3d 56, 163 (2d Cir. 2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment)). "[O]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." Ewing v. California, 538 U.S. 11, 21 (2003) (internal quotations omitted) (rejecting Eighth Amendment challenge to 25-year sentence for theft of golf clubs worth $1,200). After Rivera served a state sentence for molesting his niece and nephew throughout their childhood, he sexually exploited four adolescent boys, one of them only thirteen years old. In light of the gravity of Rivera's offenses and his recidivist nature, we cannot draw "an inference of gross disproportionality" from the mandatory life sentence at

26

issue here.  *Harmelin*, 501 U.S. at 1005 (Kennedy, *J.*, concurring).

Lastly, Rivera's Sixth Amendment challenge to his sentence is defeated by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998).

**CONCLUSION**

For the foregoing reasons, we affirm.