11-4631-cr
United States v. Salemo

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 10th day of October, two thousand twelve.

PRESENT: REENA RAGGI,
DENNY CHIN,
SUSAN L. CARNEY,
*Circuit Judges*.

------------------------------------------------------------------------

UNITED STATES OF AMERICA,
*Appellee*,

v.                                                          No. 11-4631-cr

GEORGE SALEMO,
*Defendant-Appellant*.

------------------------------------------------------------------------

APPEARING FOR APPELLANT:     JEFFREY A. WILLIAMS (Michael S. Schachter, Robin A. Van Der Meulen, Alicia D. Kelman, Elizabeth C. Roache, *on the brief*), Willkie Farr & Gallagher, New York, New York.

APPEARING FOR APPELLEE:     BRENT S. WIBLE (Adam Fee, *on the brief*), Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of conviction entered on October 27, 2011, is AFFIRMED.

George Salemo stands convicted after jury trial of two counts of wire fraud in connection with his attempts (1) between March and May 2009, to secure financing for a sea cucumber farming project in the Marshall Islands (Count One), and (2) between August and November 2010, to acquire six parcels of distressed commercial real estate in the Bronx (Count Two). See 18 U.S.C. § 1343. Salemo appeals his conviction on Count Two only, challenging (1) the sufficiency of the evidence proving fraudulent intent, (2) the denial of his pre-trial severance motion, (3) the exclusion from evidence of two emails between Salemo and his attorney, (4) the district court's response to a jury note, and (5) his 162-month sentence. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.      Sufficiency of Evidence

We review Salemo's sufficiency challenge de novo. See United States v. Abu-Jihaad, 630 F.3d 102, 134–35 (2d Cir. 2010), cert. denied, 131 S. Ct. 3062 (2011). We are obliged to uphold the conviction if the evidence, viewed in the light most favorable to the government, would permit any rational jury to find guilt proved beyond a reasonable doubt. See id. Salemo argues that the evidence was insufficient to permit a rational jury to find that

he intended to deprive Milbank Real Estate ("Milbank") of the six parcels of real estate at issue without paying the $22 million sale price. He contends that the evidence shows, at most, that he misrepresented his identity and presented falsified bank statements and checks to Milbank in order to stall for time to secure the required financing, and that these misrepresentations cannot support a wire fraud conviction. See United States v. Starr, 816 F.2d 94, 98 (2d Cir. 1987) ("[T]he harm contemplated must affect the very nature of the bargain itself.").

Salemo's intent in making numerous false representations to Milbank was a question of fact for the jury. See United States v. Coppola, 671 F.3d 220, 239 (2d Cir. 2012) ("[T]he task of choosing among permissible competing inferences is for the jury, not a reviewing court." (internal quotation marks omitted)). While Salemo was free to urge a non-fraudulent explanation for his misrepresentations, the jury was by no means required to find the argument persuasive. Although we review only a cold record, we reach the same conclusion as the trial court: "common sense" would permit a rational jury to find, based on the lengths to which Salemo went in misrepresenting himself and his means to Milbank, "that one wouldn't be undertaking this kind of scheme unless one intended to obtain those buildings through false and fraudulent means." Trial Tr. 637, J.A. 219.

In urging a contrary conclusion, Salemo cites to email evidence that, he contends, demonstrates his intent to secure a mortgage on the properties prior to closing to pay Milbank the $22 million owed under the contract. On sufficiency review, however, we must assume

3

that the jury did not find the emails to be credible evidence of such intent. Indeed, as the government observes, a rational jury could still conclude that Salemo intended to trick Milbank into turning over the properties without payment, and that the email evidence, at best, indicated that Salemo might at some time thereafter repay Milbank for what he had managed to procure by fraud.

Salemo further maintains that the improbability of tricking a real estate company into surrendering $22 million worth of property without payment supports his sufficiency challenge. That argument fails because the law punishes a fraudulent scheme without regard to its likely success. "[T]he government is not required to show that the intended victim was actually defrauded, but need only show that the defendants contemplated some actual harm or injury." United States v. Zagari, 111 F.3d 307, 327 (2d Cir. 1997) (internal quotation marks and alterations omitted); see United States v. Trapilo, 130 F.3d 547, 552 (2d Cir. 1997) (calling success of scheme "irrelevant" to wire fraud offense); United States v. Church, 888 F.2d 20, 24 (5th Cir. 1989) (rejecting sufficiency challenge to bank fraud notwithstanding scheme's "implausibility").

In sum, a rational jury could find that the scheme of misrepresentations was intended not merely to keep the deal alive, but to deprive Milbank of property without payment, however unlikely the prospect of Salemo's achieving that criminal goal. In reaching this conclusion, we are mindful that "a jury may bring to its analysis of intent . . . all the circumstantial evidence it has received on the scheme and the purpose of the scheme in

4

which the defendant allegedly participated." United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999). That includes evidence of all of Salemo's misrepresentations pertaining to the alleged real estate scheme, as well as his earlier use of forged government documents to acquire unrelated financing, which, as we explain infra, was properly admitted to prove not only Count One but Salemo's fraudulent intent on Count Two. It also includes the probative and undisputed fact that Salemo had attempted through deception to bypass the escrow deposit condition, from which fact the jury could rightly infer that Salemo intended, through comparable trickery, to bypass the condition of paying the full $22 million contract price on closing.[1]

Accordingly, we reject Salemo's sufficiency challenge as without merit.

2.      Joinder and Motion To Sever

Salemo contends that the trial court erred in refusing to sever Counts One and Two of the indictment. See Fed. R. Crim. P. 14(a). We review a lower court's rulings under Rule

---

[1] In any event, we note that Salemo's theory of insufficiency—i.e., that his lies were intended merely to keep negotiations alive, to the exclusion of other bidders—is foreclosed by United States v. Carlo, 507 F.3d 799 (2d Cir. 2007) (per curiam), in which we held that causing others "to make economic decisions about the viability of their real estate projects based on misleading information" deprives those persons of property rights under § 1343. Id. at 802 (upholding conviction based on evidence that defendant deceived developer clients "in the hope that they would continue their projects, at great risk and expense, while he pursued an ever-dwindling chance of actually securing funding"). We held in Carlo that the defendant's desire to see the transactions close on legitimate terms, as Salemo maintains is the case here, did "not negate his intent to inflict a genuine harm on the victims." Id. Such a theory of conviction comports with the government's argument on summation that Salemo made misrepresentations "to persuade Milbank to keep going with the deal, to make Milbank think that defendant actually had money to buy these buildings." Trial Tr. 679, J.A. 221.

for abuse of discretion, see United States v. O'Connor, 650 F.3d 839, 859 (2d Cir. 2011); United States v. Sampson, 385 F.3d 183, 190 (2d Cir. 2004), and conclude there was no abuse of discretion here. To the extent Salemo bases his argument on the misjoinder provision of Rule 8(a), we review the district court's ruling de novo, see United States v. Shellef, 507 F.3d 82, 96 (2d Cir. 2007), and conclude that Salemo fails to show either misjoinder or prejudice, see United States v. Rivera, 546 F.3d 245, 253 (2d Cir. 2008).

The offenses charged in the two counts, each consisting of Salemo's use of forged documents to acquire money or property via entities he controlled, although occurring approximately one year apart, display enough of a general likeness to warrant joinder. See Fed. R. Crim. P. 8(a); United States v. Rivera, 546 F.3d at 253; United States v. Ruiz, 894 F.2d 501, 505 (2d Cir. 1990); United States v. Werner, 620 F.2d 922, 926 (2d Cir. 1980). Further, because the fraud charged in Count One would have been admissible in any event on the disputed question of Salemo's fraudulent intent on Count Two, see United States v. Caputo, 808 F.2d 963, 968 (2d Cir. 1987), Salemo cannot demonstrate prejudice from the joinder, see United States v. Halper, 590 F.2d 422, 431 (2d Cir. 1978) (noting "element of prejudice" from misjoinder "is largely absent in situations where evidence of the separate crimes would be admissible anyway"). Indeed, the district court carefully weighed the potential prejudice from the evidence against its probative value and the similarity of the offenses before concluding that severance was unwarranted. We concur in that assessment.

3.      Exclusion of Evidence

Salemo faults the exclusion from evidence of a pair of emails between himself and his attorney, Seymour Hurwitz, that Salemo argues show his lack of intent to defraud. We review the district court's evidentiary ruling for abuse of discretion, and we will vacate a conviction only for manifest and prejudicial error, which are not present here. See United States v. Miller, 626 F.3d 682, 688 (2d Cir. 2010), cert. denied, 132 S. Ct. 379 (2011).

As an initial matter, the district court did not exclude the emails from evidence outright; rather, it conditioned admission of these hearsay statements on Salemo or his counsel testifying to their relevance. Salemo's counsel responded by implying that Hurwitz, already under subpoena, would testify. In fact, he was not called as a witness.

In the first email, Hurwitz instructed Salemo to forward a copy of a check to Milbank to confirm the parties' deal. In the second email, Hurwitz added, "when we sign the contract we are going to make the actual deposit to Royal Abstract." J.A. 118. The district court acted well within its discretion in finding that, without further explanation, the emails by Hurwitz were more confusing than probative on the issue of Salemo's state of mind and, therefore, his intent. See Fed. R. Evid. 403; United States v. Salameh, 152 F.3d 88, 110 (2d Cir. 1998) (holding that appellate court will not second-guess trial court's Rule 403 assessment unless arbitrary or irrational). Indeed, as the government observes, Salemo presented no advice-of-counsel defense; nor is it apparent how the excluded emails, which say nothing about sending fraudulent checks to Milbank, would have bolstered Salemo's

7

defense or negated a finding of fraudulent intent.

Accordingly, Salemo's evidentiary challenge fails on the merits.

4.      Response to Jury Note

In the course of its deliberations, the jury sent a note to the district court asking if "stalling for time by use of fraudulent or deceitful methods to buy or obtain property constitute[s] a scheme [to defraud]." Trial Tr. 786, J.A. 235. Salemo argues that the district court's response allowed the jury to convict him simply for stalling, without finding intent to defraud Milbank of property. The record is to the contrary. The district court's careful and detailed answer made clear that a defendant could only be convicted on proof of the elements of wire fraud.[2] Thus, the jury needed to consider not simply whether Salemo was stalling for time, but whether he did so "as part of a scheme to obtain money or property, by means of deceit." Id. at 806, J.A. 240. In short, the jury was instructed to consider whether stalling was "one of the deceitful means that was being used to obtain money or property or to try to obtain money or property," and whether that was "being done by the defendant with an intent to defraud and to harm, or not. " Id.

---

[2] To the extent Salemo argues in his reply brief that the district court's response was impermissible in light of the jury's question about stalling taken together with its inquiry whether the word "obtain" as used within § 1343 includes "buy," he waived this argument by not raising it in his opening brief. See Connecticut Bar Ass'n v. United States, 620 F.3d 81, 91 n.13 (2d Cir. 2010) ("Issues raised for the first time in a reply brief are generally deemed waived.").

Not only do these excerpts accurately state the law, the full response,[3] reviewed in context and in light of the total charge, see Lowenfield v. Phelps, 484 U.S. 231, 237 (1988); United States v. Mitchell, 328 F.3d 77, 82 (2d Cir. 2003), correctly instructed the jury on the government's burden to prove the requisite criminal intent for wire fraud, and did not present the jury with a legally unsound theory of conviction, see generally United States v. Desnoyers, 637 F.3d 105, 110 (2d Cir. 2011) (distinguishing between factual and legal insufficiency of conviction).

5.      Sentence

Finally, Salemo contends that the district court committed procedural error in applying

---

[3] The district court instructed the jury as follows:

> The answer to that one really where I was hung up is sometimes it could and sometimes it couldn't. It all depends on the whole situation. Stalling for time is not necessarily a scheme to defraud. One can think of lots of situations where it would not be a scheme to defraud, but sometimes it is a scheme to defraud. How do you know the difference? You know the difference by looking at all those other elements. Was it being used as part of a scheme to obtain money or property, by means of deceit? Was it one of the deceitful means that was being used to obtain money or property or to try to obtain money or property, and was that being done by the defendant with an intent to defraud and to harm, or not? That puts the context and puts the way in which you can decide whether it's a stalling that is not wire fraud or a stalling that is wire fraud. So it's really when you put it in the context of all the other elements and all the other aspects that you know the answer to your question. And that's why we can't just answer it in the abstract. Sometimes it could be, sometimes it couldn't be. You have to look at the whole thing and then you'll know the answer.

Trial Tr. 806, J.A. 240.

9

a 22-level enhancement to his Guidelines base offense level, upon finding $22.5 million in total intended loss on the two counts of conviction. See U.S.S.G. § 2B1.1(b)(1). He asserts that only a 14-level enhancement was warranted based on the $500,000 loss calculation for Count One. We review "the factual determinations underlying a district court's loss calculation at sentencing for clear error," United States v. Canova, 412 F.3d 331, 351 (2d Cir. 2005), and we identify none here.

Salemo argued to the court, as he did to the jury, that he intended to cause Milbank no loss on Count Two because he planned to pay for the properties out of mortgage proceeds. See generally United States v. Confredo, 528 F.3d 143, 152 (2d Cir. 2008) (recognizing defendant's right to persuade court that intended loss was less than value of property involved). Just as the jury was entitled to find beyond a reasonable doubt that Salemo intended to defraud Milbank out of $22 million worth of property, the district court was entitled to find that same intent by a preponderance of the evidence. See United States v. Vaughn, 430 F.3d 518, 525 (2d Cir. 2005); U.S.S.G. § 2B1.1, cmt. n.3(A) (defining "loss" to include even "intended pecuniary harm that would have been impossible or unlikely to occur").

We have considered defendant's other arguments on appeal and we conclude that they are without merit. Accordingly, the judgment of conviction is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

10