IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
August 19, 2014 Session

## STATE OF TENNESSEE v. THOMAS WILLIAM WHITED

**Appeal from the Criminal Court for Knox County**
**No. 100430     Steven Wayne Sword, Judge**

_____

## No. E2013-02523-CCA-R3-CD - Filed May 4, 2015

_____

The defendant, Thomas William Whited, was convicted of nine counts of especially aggravated sexual exploitation of a minor, a Class B felony; one count of attempted especially aggravated sexual exploitation of a minor, a Class C felony; thirteen counts of observation without consent, a Class A misdemeanor; and one count of attempted observation without consent, a Class B misdemeanor. The defendant received an effective sentence of twenty-two years. On appeal, the defendant argues that: (1) the evidence is insufficient to support a finding that the defendant used a minor in the production of material that included the minor engaging in "sexual activity"; (2) the trial court erred in refusing to provide the jury with his proposed special instructions; (3) the trial court erred in refusing to permit cross-examination of the victims at the sentencing hearing; and (4) the trial court erred in imposing consecutive sentencing. After a thorough review of the record, the briefs of the parties, and the applicable law, we affirm the judgment of the criminal court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which DAVID A. PATTERSON, SP. J., joined. CAMILLE R. MCMULLEN, J., filed a dissenting opinion.

Mark Stephens, District Public Defender, Knoxville, Tennessee, for the appellant, Thomas William Whited.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Randy Nichols, District Attorney General; and Joanie Stewart and Philip Morton, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## Facts and Procedural History

This case arose after the defendant used his cell phone to secretly record his daughter, victim one,[1] in her bathroom and both victim one and her friend, victim two, in victim one's bedroom. The defendant recorded a series of eleven videos from June 21, 2012, to August 10, 2012.

On the evening of August 15, 2012, the defendant's wife saw a phone on her bedroom dresser that she believed belonged to her. She picked up the phone to charge it, and she realized that it was not her phone when she saw the screen saver. The phone belonged to the defendant, although he was not currently using the phone. She opened the photo gallery of the phone and saw pictures that she did not recognize. After going through the photographs, she realized that there was a video of the defendant setting up his phone to record a video of their daughter in the bathroom. She discovered multiple videos on the phone and asked the defendant for an explanation. When he offered none, his wife told him that he needed to leave the residence. The defendant told his wife that he was sorry and that both of his parents had molested him when he was a child. The defendant then left the residence and sat in his vehicle for several moments until his wife called him and told him that he needed to leave, and the defendant complied.

The next morning, the defendant was supposed to let victim one's brother take her to school. The defendant returned to the residence and would not allow victim one's brother to take her to school alone, so victim one's brother and the defendant took her to school. The defendant's wife informed her boss what she had discovered on the defendant's phone, and she then got in touch with police. She had the phone containing the videos with her, and she asked police to come to her work place. Police arrived, and the defendant's wife gave her consent for police to take the phone.

After watching the videos, the defendant's wife recognized that they were filmed in the guest bathroom and their daughter's bedroom. The children were the primary users of the guest bathroom, and victim one did not share her room with any of her siblings. The defendant's wife kept hand towels in a basket on the guest bathroom sink for the children to

---

[1] In order to protect the privacy of the minor victims, we will refer to them as victim one and victim two.

use, and the defendant hid the phone in this basket when recording victim one in the bathroom. The defendant's wife changed the towels about once a week and shortly before discovering the videos, she noticed that the towels had recently become disheveled. She thought that it was strange that the towels needed frequent straightening because the children did not usually take the time to remove a towel when they used it. The towels had fallen over to the point where it looked like items had been moved inside of the basket.

Cyber forensics investigator James Smithhart examined the defendant's phone and was initially unable to find any of the videos. However, he discovered that the videos were stored in the images folder, rather than the video folder of the phone. The default setting of the defendant's phone model was to save videos in the video folder and saving videos in the image folder required deliberate action by the user. He found eleven videos that matched the allegations made by the defendant's wife, nine of which provided the basis for the defendant's especially aggravated assault convictions.

The first video showed the defendant placing the camera in a basket on the bathroom sink to record the front of the shower. The defendant spent several minutes hiding and adjusting the camera, and at one point he stepped back toward the shower, appearing to gauge how the camera would depict someone in front of the shower. He was captured on film from his waist up. The victim entered the bathroom twenty seconds after the defendant left. As she removed her clothes, she was facing the camera. The camera was positioned to depict the victim from the top of her pubic area to the top of her head. Several times throughout the video, the victim stood in front of the camera, and her breasts were in the center of the recording. Her buttocks and breasts were also visible when she entered the shower. After she exited the shower, she was inches away from the camera, and her right breast was again in the center of the recording as she styled her hair.

In the second video, the defendant hid the camera in victim one's bedroom, and the camera was aimed at the center of the bedroom. The positioning of the camera made a person standing in the center of the room the primary focus of the recording. The victim entered the bedroom less than one minute after the defendant hid the camera. The buttocks of one of the victims was visible as she changed out of a swimsuit, and her breasts were visible as well. The defendant retrieved the camera one minute after the victim exits the bedroom.

In the third video, the defendant placed the camera in the bathroom, and the victim entered two minutes later. When the victim was standing in front of the mirror, the position of the camera framed the victim from her pubic area to the top of her chin, capturing less of her face than the first recording did. The victim's breasts were visible as she stood in front of the camera, and her breasts, buttocks, and pubic area were briefly visible as she stepped

in and out of the shower. The victim's breasts were intermittently visible as she stepped in and out of frame, and the top of her pubic area and her breasts were visible as she stood in front of the sink for a period of time.

The next relevant video was recorded in victim one's bedroom. Both victims entered the bedroom wearing swimsuits less than one minute after the defendant hid the camera. The recording showed victim two's breast as she stands in the center of the room changing her clothes. The defendant returns for the camera less than thirty seconds after the victims left the room.

In the next video, the defendant entered the bathroom while the victim was already in the shower. He used an object to position and hide the camera. The defendant positioned the camera toward the rear of the shower, instead of toward the front as he did in the previous two videos recorded in the bathroom. The video captured the victim's breasts and buttocks as she exited the shower. Her breasts were also at the center of the frame as she stood in front of the camera drying off. The defendant entered the bathroom and collected the camera thirty seconds after the victim exited the bathroom.

In the sixth video, the defendant again aimed the camera toward the rear of the shower. Twenty seconds later, the victim entered the bathroom, and the defendant told her to get into the shower. The victim's breasts, buttocks, and the top of her pubic area were briefly visible when she stepped into the shower. The victim's breasts were again seen as she exited the shower and visible while she dried off in front of the camera. The defendant retrieved the camera three minutes after the victim left the bathroom.

In the next video, the defendant repositioned the camera to record the middle of the shower. The victim entered the bathroom three minutes later, and her breasts were briefly visible. The recording showed the victim in her underwear as she maneuvered to turn on the shower. Her breasts and buttocks were visible as she exited the shower, and the profile of her breast, buttocks, and pubic area were intermittently visible as she dried off and moved about the bathroom.

In the eighth video, the defendant hid the camera and pointed it toward the middle of the shower. Forty seconds after the defendant finished adjusting the camera, the victim entered the bathroom. The top of the victim's buttocks was exposed as she remained standing with her back to the camera. Her breast and pubic area were visible as she stepped out of the shower and began to put on her clothes. Her breasts were visible after she put on her underwear, and she briefly leaned directly over the camera to retrieve a towel. Her breasts continued to remain visible as she put on her pants and stood inches away from the camera.

In the final video, the defendant hid the camera in victim one's bedroom, and the victims entered the bedroom six seconds after he positioned the camera. One of the victims asks what he is doing in the room, and he replied that he was looking for markers. The camera was pointed toward the center of victim one's bed, and victim one's right breast was briefly visible as she changed out of her swimsuit. The camera then showed victim one's buttocks as she continued to change her clothes.

Both victim one and victim two were unaware that the defendant was secretly filming them. Both victims were distraught at the thought of the defendant recording them because he was victim one's father, and victim two viewed him as a father figure.

At the conclusion of the State's proof, defense counsel asked for a special jury instruction that defined the word "lascivious." The trial court denied the request, finding that it could place an unfair burden on the State to prove factors that were not a part of the statute. The trial court also denied the defense's request to include the instruction that photography of an undressed minor by itself was insufficient to sustain a conviction for especially aggravated sexual exploitation for a minor. At the conclusion of the proof, the jury found the defendant guilty of nine counts of especially aggravated sexual exploitation of a minor, thirteen counts of observation without consent, one count of attempted especially aggravated sexual exploitation of a minor, and one count of attempted observation without consent.

At the sentencing hearing, both victims and victim one's mother read their victim impact statements aloud to the court. In her statement, victim two mentioned that she had been receiving outpatient therapy and that at one point she had attempted to physically harm herself. In response to a question by the prosecutor at the conclusion of her statement, victim two stated that she attempted to harm herself due to the depression that she experienced as a result of the defendant's crimes. The trial court did not permit defense counsel to cross-examine any of the witnesses. The parties agreed that the defendant was a standard, Range I offender, and the court found that several enhancement and mitigating factors were applicable. The court gave great weight to enhancement factor fourteen, abuse of a position of public or private trust, because the defendant used his position as a father to victim one and a father figure to victim two to facilitate his crimes. The court found that the fact that the defendant's actions did not threaten or cause serious bodily harm slightly applied as a mitigating factor. The court also found the defendant's lack of a prior criminal history to be a mitigating factor, along with his military history and steady work history. In considering consecutive sentencing, the court found that the defendant did commit two or more statutory offenses involving sexual abuse of a minor where the aggravating circumstances arose from the relationship between the defendant and the victims.

The trial court sentenced the defendant to serve twelve years for the first especially

aggravated sexual exploitation of a minor conviction and to serve ten years for each of the remaining especially aggravated sexual exploitation of a minor convictions. The trial court also sentenced the defendant to serve six years for the attempted especially aggravated sexual exploitation of a minor conviction, eleven months and twenty-nine days for each of the observation without consent convictions, and six months for attempted observation without consent, all to be served concurrently to the twelve-year sentence for especially aggravated sexual exploitation of a minor. The court ordered the defendant to serve one of the ten-year sentences for especially aggravated sexual exploitation of a minor consecutively to the twelve-year sentence for especially aggravated sexual exploitation of a minor for an effective sentence of twenty-two years.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant argues that the evidence is insufficient to support his convictions for especially aggravated exploitation of a minor and attempted especially aggravated exploitation of a minor. Specifically, he contends that the videos did not depict the victims engaging in "sexual activity" because nudity alone does not render an image "lascivious" without the presence of the factors enumerated in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), and he claims that the nudity of the victims is the only *Dost* factor applicable to his case.

When a defendant challenges the sufficiency of the evidence, the relevant question for this court is "whether, after reviewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "'the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Elkins*, 102 S.W.3d 578, 581 (2003) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)) . Therefore, this court will not re-weigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (superseded by rule). Instead, it is the trier of fact, not this court, who resolves any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court applies the same standard of review regardless of whether the conviction was predicated on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

## A. Overview

Tennessee Code Annotated section 39-17-1005(a)(1) (2010) states that "[i]t is unlawful for a person to knowingly promote, employ, use, assist, transport, or permit a minor to participate in the performance of, or in the production of, acts or material that includes the minor engaging in: (1) Sexual activity." "Sexual activity" includes "[l]ascivious exhibition of the female breast or the genitals, buttocks, anus or pubic or rectal area of any person." *Id.* § 39-17-1002(8)(G).

The defendant's challenge to the sufficiency of the evidence hinges on the definition of "lascivious" as used in the statute. Although the statute does not define "lascivious," Black's Law Dictionary defines the term as: "tending to excite lust; lewd; indecent; obscene." *Black's Law Dictionary* 897 (8th ed. 2004). Further instructive in our analysis are the six factors set out by the *Dost* court to determine whether an image of a minor constitutes lascivious exhibition:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area

> 2) whether the setting of the visual depiction is sexually suggestive, i.e. in a place or pose generally associated with sexual activity;

> 3) whether the child is depicted in an unnatural pose, or inappropriate attire, considering the age of the child;

> 4) whether the child is fully or partially clothed, or nude;

> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Dost*, 636 F. Supp at 832. These factors should be considered "among any others that may be relevant in the particular case." *Id.* The *Dost* court observed that a visual depiction of a minor "need not involve all of these factors to be a 'lascivious exhibition of the genitals or pubic area.' The determination will have to be made based on the overall content of the visual depiction, taking into account the age of the minor." *Id.* Courts have acknowledged that the *Dost* factors should not be applied exclusively, but many courts have found the factors useful in determining whether a visual depiction of a minor is "lascivious." *State v.*

*John Michael Whitlock*, No. E2010-00602-CCA-R3-CD, 2011 WL 2184966, at *4 (Tenn. Crim. App. June 6, 2011) (citing *United States v. Overton*, 573 F.3d 679, 686 (9th Cir. 2009) (stating that the *Dost* factors "are neither exclusive nor conclusive, but operate as merely 'a starting point' "); *United States v. Rivera*, 546 F.3d 245, 250 (2d Cir. 2008) ("Although the *Dost* factors are not definitional, they are useful for assessing the sufficiency of evidence, and pose questions that are (at least) germane to the issue of lasciviousness."); *United States v. Campbell*, 81 F. App'x 532, 536 (6th Cir. 2003) (noting that the list of *Dost* factors are "not exhaustive" but that they "provide a framework for analyzing the image in its entirety"); *State v. Roberts*, 796 So.2d 779, 786-87 ("[W]e find the *Dost* factors helpful in our analysis herein but do not find them all inclusive or necessarily applicable to every situation."); *State v. Dubois*, 746 N.W.2d 197, 208 (S.D. 2008) ("The *Dost* factors are neither exhaustive nor mandatory; however, they provide a workable criterion to an otherwise case-specific inquiry.")). While courts agree that the factors are useful, there is disagreement as to how the factors should be applied.

### B. Application of the Sixth Factor

The application of the sixth *Dost* factor, in particular, has proved the most problematic. *See United States v. Amirault*, 173 F.3d 28, 34 (1st Cir. 1999) ("Is this a subjective or objective standard, and should we be evaluating the response of an average viewer or the specific defendant in this case? Moreover, is the intent to elicit a sexual response analyzed from the perspective of the photograph's composition, or from extrinsic evidence (such as where the photograph was obtained, who the photographer was, etc.)?"). Some courts have elected to employ an objective standard that asks whether the image was intended or designed to elicit a sexual response in the average viewer. *See Amirault*, 173 F.3d at 35 ("[T]he focus should be on the objective criteria of the photograph's design."); *United States v. Villiard*, 885 F.2d 117, 125 (3rd Cir. 1989) ("If we were to conclude that the photographs were lascivious merely because Villiard found them sexually arousing, we would be engaging in conclusory bootstrapping rather than the task at hand—a legal analysis of the sufficiency of the evidence of lasciviousness."). Other courts utilize a subjective approach and analyze the depiction in terms of whether it would elicit a sexual response in the defendant or a like-minded pedophile. *See Overton*, 573 F.3d at 689 ("The homemade images of [the victim] were intended and designed to elicit a sexual response in the voyeur—namely in Overton himself or likeminded individuals."); *United States v. Rivera*, 546 F.3d 245, 250 (2d Cir. 2008) (concluding that the sixth *Dost* factor applied when "[a] reasonable jury could therefore find that Rivera composed the images in order to elicit a sexual response in a viewer—himself."). Courts applying the subjective analysis have indicated that the application of the sixth *Dost* factor could turn on the defendant's level of involvement with the production of the image. *See Rivera*, 546 F.3d at 252-53 (noting that some of the criticism of the sixth factor "is mitigated once one distinguishes between the

production of child pornography and possession" as "[i]t matters whether production or possession is the charge" and distinguishing cases such as *Amirault* and *Villard*, where the factor was applied objectively, because the defendants were charged only with the possession or transportation of child pornography); *see also Overton*, 573 F.3d at 688 (stating that the sixth factor was particularly useful where "the criminal conduct at issue relates to a defendant's role in the *production* of the exploitative images under review, and not merely the *possession* of illicit materials.") (emphasis in original); *Commonwealth v. Sullivan*, 972 N.E.2d 476, 494 (Mass. App. Ct. 2012) ("The problematic role played by the sixth factor is heightened in a possession case given that the possessor of a photograph is not necessarily the one who 'intended or designed' the composition.") (Milkey, J., *dissenting*).

In Tennessee, three panels of this court have applied the *Dost* factors to determine whether a visual depiction of a minor constituted "sexual activity." *See State v. John Michael Whitlock*, 2011 WL 2184966, at *7 (concluding that evidence was insufficient to support conviction for sexual exploitation of a minor where defendant filmed a minor child, dressed in a bathing suit, at a swimming pool and twice briefly focused the video on the victim's pubic area because only the first *Dost* factor was "marginally met" and examining the video "in the totality of the circumstances, and in light of the other *Dost* factors" led to the conclusion that the video did "not constitute lascivious exhibition of the girl's pubic area."); *State v. Gary Stephen Mayes*, No. E2004-02344-CCA-R3-CD, 2005 WL 2416620, at *10 (Tenn. Crim. App. Oct. 3, 2005) (concluding that *Dost* factors one, three, and six were present when the defendant filmed clothed victims, and "the videotape contain[ed] numerous close-up images of the victim's breasts and crotch," which "were filmed as the victim assumed unnatural and obviously uncomfortable positions," including one in which "the defendant zoom[ed] the camera lens down the front of her gaping shirt to her breasts, where he focus[ed] at length."), *perm. app. denied* (Tenn. Feb. 21, 2006); *State v. Larry Dixon*, No. 01C01-9802-CC-00085, 1998 WL 712344, at *2 (Tenn. Crim. App. Oct. 13, 1998) (concluding that *Dost* factors one, two, four, and six were present when the defendant, behind a hidden two-way mirror, filmed two minor girls taking a bath, his wife instructed the victims to pose as for a photograph, and the defendant viewed the video before having sexual intercourse with his wife), *perm. app. denied* (Tenn. Mar. 1, 1999).

In *State v. John Michael Whitlock*, our court provided some clarity to Tennessee's approach to the analysis of the sixth factor, stating that "we conclude that the sixth *Dost* factor must be analyzed objectively rather than subjectively." *Id.* at *6. The court indicated that the sixth factor "should be applied when the visual depiction is intended or designed to elicit a sexual response in the *average* viewer, rather than looking to the subjective response by the defendant." *Id.* (emphasis in original). The court reasoned that analyzing the sixth *Dost* factor "by examining a defendant's subjective reaction to a visual depiction of a minor, no matter how innocent, [] would be tantamount to convicting a defendant because of his

'impure' thoughts." *Id.* However, the court limited this analysis to the charge of sexual exploitation of a minor, noting that "[w]hether the same analysis should be employed when a defendant is convicted of especially aggravated sexual exploitation of a minor or aggravated sexual exploitation of a minor is a question for another day." *Id.* at *6 n.7. Citing to the *Whitlock* court's concern with the subjective application of the sixth factor "and the fact that no other jurisdiction appears to differentiate between the objective and subjective test depending on the severity of the offense charged," the defendant contends that the sixth factor should be applied objectively. However, as we will explain, we respectfully disagree with the defendant's contention.

Before holding that courts should apply the sixth factor objectively to convictions for sexual exploitation of a minor, the *John Michael Whitlock* court observed that a panel of this court previously appeared to apply the sixth factor subjectively. In *Larry Dixon*, the defendant was convicted of especially aggravated sexual exploitation of a minor for secretly recording the minor victims nude in a bathtub. *Larry Dixon*, 1998 WL 712344, at *2. The *Larry Dixon* court concluded that testimony that the defendant viewed the videotape before engaging in sexual intercourse "support[ed] the argument that the video was intended to elicit a sexual response in the viewer." *Id.* at *2. Because the defendant was responsible for creating the videotape, his particular usage of the tape was relevant in ascertaining his subjective intent in creating the tape. By leaving open the question of whether the sixth *Dost* factor should be applied objectively or subjectively to the crime of aggravated or especially aggravated sexual exploitation of a minor, the *John Michael Whitlock* court implied that the standard could be contingent upon the defendant's level of involvement with the production of the image.[2]

In Tennessee, the definition of especially aggravated sexual exploitation of a minor contains two essential elements: (1) that the defendant "promote, employ, use, assist, transport, or permit a minor to participate in" (2) a depiction of sexual activity. T.C.A. § 39-17-1005(a)(1). The terms "promote, employ, use, assist, transport, or permit" implicate the defendant's level of involvement in the production of the material. However, the definition of sexual exploitation of a minor contains only one essential element: that the defendant "possess" an image depicting a minor engaged in sexual activity. A defendant is convicted of especially aggravated sexual exploitation of a minor due to the defendant's role in the creation of the image and the contents of the image, while a conviction for sexual exploitation of a minor is based on the contents of the image itself. Effectively, sexual exploitation of a minor is a crime of possession, while especially aggravated sexual

---

[2] We note that although the defendant in *John Michael Whitlock* filmed the material at issue, the court applied the sixth *Dost* factor objectively. However, the defendant was convicted only of sexual exploitation of a minor and acquitted of the charge of especially aggravated sexual exploitation of a minor.

exploitation of a minor is a crime of production. As a result, the intent of the creator takes on greater relevance than it would in a case where a defendant is convicted simply for possessing material depicting a minor engaged in sexual activity. When a defendant is convicted for his role in the production of such material, it follows that the intent in the production should be analyzed from the perspective of the defendant or a group of like-minded pedophiles. Therefore, we conclude that in cases of especially aggravated sexual exploitation of a minor, the sixth *Dost* factor should be applied subjectively.

In the case *sub judice*, the defendant contends that the recordings of the victims merely depict nudity and are insufficient to support a conviction for especially aggravated sexual exploitation of a minor. However, an application of the *Dost* factors to the videos mandates the opposite conclusion.

We acknowledge that using a camera to secretly capture images of minors presents a factually close case. *See United States v. Steen*, 634 F.3d 822, 827 (5th Cir. 2011) (concluding that the victim's genital and pubic region was not the focal point of a fifteen-second video secretly recorded in a tanning salon when pubic region was visible for 1.5 seconds); *United States v. Johnson*, No. 2:10-CR-71-FtM-36DNF, 2011 WL 2446567, at *5 (M.D.Fla. June 15, 2011) (concluding that stationary cell phone placed in a bathroom to record the victim did not satisfy the first factor when the minor's pubic region was visible only for a brief time and "there was no close-up, zoom, or highlight of the minor's pubic area"); *State v. Gates*, 897 P.2d 1345, 1350-51 (Ariz. Ct. App. 1994) (concluding stationary camera used to record minors changing clothes and showering did not satisfy the first *Dost* factor when the recording did not focus on the genitals or pubic areas of the victims); *but see United States v. Clark*, Crim. A. No. 09-33-GMS, 2010 WL 3488138, at *5 (D.Del. Aug. 30, 2010) (concluding that the first factor was applicable to a recording obtained via hidden cell phone when the recording depicted areas of the victim's body normally covered by clothing from distances of a few feet to a few inches away and that a jury could reasonably infer that the defendant framed the camera, which was waist-high and resulted in a focus on the genital areas of the victim's body, in order to capture images of the victim's genital or pubic areas); *People v. Sven*, 848 N.E.2d 228, 231-32 (Ill. App. Ct. 2006) (concluding that a hidden stationary recording of a minor in a bathtub satisfied the first factor when some portions of the recording depicted only the bathroom, but all that was visible during other parts of the recording were the minor's genitals and buttocks). Here, while the defendant did not physically zoom in the camera to make the victims' breasts and genital area the focal point of the recording, he achieved this same effect through the placement and position of the camera.

The bathroom videos were recorded by a camera that was hidden in a basket on the bathroom sink, which was at waist level. The videos depicted the victim fully nude as she

entered and exited the shower and particularly captured her breasts as she stood in front of the sink, only inches away from the camera. The defendant re-positioned the camera to record different areas of the shower, leading to the reasonable inference that he adjusted the camera to better capture longer and better quality videos of the victim's breasts and genitalia. Similarly, the camera in the bedroom videos was specifically placed so that the buttocks and breasts of the victims were in the center of the screen when the victims stood in the center of the room. Although there are times during the recordings where the victims are not in the frame, this does not offset the portions of the recordings where the positioning and framing of the camera resulted in a focus on the victims' breasts and genitalia. *See Sven*, 848 N.E.2d 228 at 233 (concluding that an examination of individual parts of a secret bathroom recording, rather than the entirety of the recording was proper in the application of the first factor, as portions of the tape showing only the bathroom did "not serve to dilute other portions where [the victim] appear[ed] naked"). We conclude that the first factor is met.

All of the videos depict the victims either fully or partially nude, satisfying the fourth factor, and we conclude that the sixth factors also applies. The videos depict the victims' breasts, buttocks, and pubic areas during private moments where they believed that they were alone. The defendant was responsible for recording each video, often setting up the camera seconds before the victims entered the bathroom or bedroom. There were a series of eleven videos recorded, nine of which showed the victims either partially or fully nude. When his wife confronted him about the videos, the defendant stated that he was sorry and that both of his parents had molested him. The position of the camera indicates that the defendant selected the locations to film to best capture the victims' nudity. The defendant retrieved the camera almost immediately after the victims left the bathroom and the bedroom. He covertly stored the videos on his phone, saving them under the "pictures" folder. As a result, the jury could reasonably infer that he created the recordings to elicit a sexual response in himself or a like-minded pedophile. We conclude that the evidence was sufficient to support the defendant's convictions for especially aggravated sexual exploitation of a minor.

## II. Jury Instructions

The defendant argues that the trial court erred by failing to include his two requested special jury instructions for the charge of especially aggravated sexual exploitation of a minor. The defendant's first request stated:

> To find that the content depicted in the video was 'lascivious,' some appropriate factors to consider are:
>
> (1)     Whether the focal point of the visual depiction is on the child's genitals or pubic area;

12

(2)  Whether the setting of the visual depiction is sexually suggestive, i.e. in a place or pose generally associated with sexual activity;

(3)  Whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

(4)  Whether the child is fully or partially clothed, or nude;

(5)  Whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and

(6)  Whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

Factor (6) should be applied when the visual depiction is intended or designed to elicit a sexual response in the average viewer, rather than looking to the subjective response of the defendant.

The defendant's second requested instruction read: "Photography of a undressed minor by itself is not sufficient to sustain a conviction for this offense." (case citations omitted).

During a jury-out hearing, the trial court expressed its concern with including the *Dost* factors in the jury charge. The court observed that this court stated in *John Michael Whitlock* that the *Dost* factors should not be applied exclusively but were a beneficial starting point in determining whether an image was lascivious. Noting that juries "put a lot of stock in what the [j]udges have to say," the trial court opined that charging the jury with the *Dost* factors could unduly influence the jury. The court reasoned that an instruction to the jury to consider the *Dost* factors in addition to the circumstances surrounding the creation of the video could be prejudicial to the defendant, as the jury could be inclined to convict the defendant simply because he used a hidden camera to record the victims. The court also expressed concern with instructing the jury to consider only the *Dost* factors in determining lasciviousness. The court reasoned that because the Legislature had not adopted the factors, such an instruction could place an undue burden on the State to prove the existence of factors not included in the statute. The trial court denied the request to instruct the jury regarding the *Dost* factors but stated that both the State and defense counsel could make arguments to the jury regarding the meaning of "lascivious." The trial court also declined to adopt the defendant's instruction that the analysis of the sixth factor was an objective one, finding that because it was not charging the jury with the *Dost* factors, inclusion of the objective standard would serve only to confuse the jury. However, the trial court did permit trial counsel to argue in closing arguments that the application of whether the image was lascivious should be measured based upon the response of the average viewer.

The trial court also denied the defendant's second instruction request, finding that the

13

definitions of "sexual activity" and "lascivious" made it sufficiently clear to the jury that mere nudity of a minor was not sufficient to sustain a conviction for especially aggravated sexual exploitation of a child. The trial court then gave the jury the pattern jury instruction for especially aggravated sexual exploitation of a minor, which contained the definitions of "sexual activity" and "lascivious." The defendant now contends that the instruction was error because the jury "misunderstood the law to be applied" and improperly considered the defendant's subjective reaction to the videos.

Under the United States and Tennessee Constitutions, a defendant has a right to trial by jury. *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000). A defendant also has a right to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions. *Id.* In evaluating claims of error in jury instructions, courts must remember that "'jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning.'" *State v. Vann*, 976 S.W.2d 93, 101 (Tenn. 1998) (quoting *Boyde v. California*, 494 U.S. 370, 380-381 (1990)). When the trial court's instructions to the jury correctly, fully, and fairly state the applicable law, it is not error to refuse to give a special requested instruction. *State v. Inlow*, 52 S.W.3d 101, 107 (Tenn. Crim. App. 2000); *State v. Forbes*, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995). This court must review the entire jury charge; we can find error only if, when read as a whole, the charge fails to fairly submit the legal issues or misleads the jury as to the applicable law. *State v. Phipps*, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994).

We conclude that the trial court did not err in refusing to provide the jury with the defendant's special instructions. We agree with the *Whitlock* court that while the *Dost* factors should at least be considered in determining whether an image is lascivious, "we are mindful that the *Dost* 'factors are neither comprehensive nor necessarily applicable in every situation.'" *State v. John Michael Whitlock*, 2011 WL 2184966, at *6 (quoting *Amirault*, 173 F.3d at 32). As a result, the *Dost* factors should be applied cautiously. *See United States v. Frabizio*, 459 F.3d 80, 88 (1st Cir. 2006) (observing that "the *Dost* factors have fostered myriad disputes that have led courts far afield from the statutory language. . . . [and] 'produced a profoundly incoherent body of case law.'") (citation omitted)); *United States v. Hill*, 322 F. Supp.2d 1081, 1085 (C.D.Cal. 2004) ("While the *Dost* factors attempt to bring order and predictability to the lasciviousness inquiry, they are highly malleable and subjective in their application."); *see also Rivera*, 546 F.3d at 253 (concluding that it was not error for the trial court to instruct the jury regarding the *Dost* factors but noting that "the jury should not be made to rely on the *Dost* factors with precision to reach a mathematical result, or to weigh or count them, or to rely on them exclusively"). The factors are beneficial in evaluating the sufficiency of the evidence, but they are not definitional. *Rivera*, 546 F.3d at 250. Because the factors have proved so difficult to apply and function as a "starting point" for determining whether an image is lascivious, the factors are not a mandatory facet of jury

instructions for the crime of especially aggravated sexual exploitation of a minor. Here, the jury instructions tracked the Tennessee Pattern Jury Instructions in defining the terms "sexual activity" and "lasciviousness" and did not mislead the jury. Therefore, we conclude that the trial court acted within its discretion and did not err in declining to instruct the jury regarding the *Dost* factors.

The trial court also committed no error in failing to instruct the jury that a visual depiction must be intended or designed to elicit a sexual response in the average viewer rather than the defendant. As we stated above, the objective standard advocated by the defendant is not the appropriate standard to apply. Further, as the trial court observed, a jury instruction involving the standard to apply in determining whether the image was intended to elicit a sexual response in the viewer in the absence of an instruction including the *Dost* factors could confuse the jury. The trial court's instructions to the jury, which were taken verbatim from the Tennessee Pattern Jury Instructions for especially aggravated sexual exploitation of a minor, correctly, fully, and fairly stated the applicable law.

Similarly, it was not error for the trial court to refuse to instruct the jury that photography of an undressed minor alone was insufficient to convict the defendant of especially aggravated sexual exploitation of a minor. The definitions of "sexual activity" and "lascivious" were sufficient to instruct the jury that more than mere nudity was required to convict the defendant of the charged offense. Therefore, we conclude that the trial court's instructions correctly, fully, and fairly stated the applicable law, and the defendant is not entitled to relief as to this issue. *See Inlow*, 52 S.W.3d at 107.

### III. Cross-examination of Victims at the Sentencing Hearing

The defendant argues that the trial court violated his Sixth Amendment right to confront witnesses against him and his right to due process when it denied him the opportunity to cross-examine the witnesses making victim impact statements or "otherwise rebut the statements." Specifically, he contends that he should have been permitted to cross-examine victim two about her receipt of inpatient psychological treatment and her attempt to commit suicide and to seek records from the hospital where victim two received treatment.

The Sixth Amendment to the United States Constitution affords a defendant the right to confront adverse witnesses. A violation of the defendant's right of confrontation is subject to a harmless error analysis. *Momon v. State*, 18 S.W.3d 152, 167 (Tenn. 2000). As the defendant acknowledges in his brief, the consensus in Tennessee is that the Confrontation Clause is not applicable at a sentencing hearing. *See State v. Stephenson*, 195 S.W.3d 574, 590 (Tenn. 2006), (*abrogated on other grounds by State v. Watkins*, 362 S.W.3d 530 (Tenn. 2012)) (citing *Williams v. New York*, 337 U.S. 241); *State v. Moss*, 13 S.W.3d 374, 385

(Tenn. Crim. App. 1999); *State v. William Edwin Harris*, No. M2008-01685-CCA-R3-CD, 2009 WL 1871919, at *6 (Tenn. Crim. App. June 30, 2009), *perm. app. denied* (Tenn. Nov. 30, 2009).

Tennessee Code Annotated section 40-35-209(b) states that reliable hearsay may be admitted as evidence if the defendant "is accorded a fair opportunity to rebut any hearsay evidence so admitted[.]" Relying on this provision and *State v. Donald Blevins*, No. E2007-01588-CCA-R3-CD, 2008 WL 3906081, at *3-6 (Tenn. Crim. App. Aug. 26, 2008), the defendant contends that "due process has been built into the concept of victim impact statements."

In *Donald Blevins*, the trial court denied probation based solely on the victim impact statement of the victim's mother, in which she asserted that the defendant had "aggravated" the victim "for weeks" to sell drugs. *Id.* at *2. This court reversed the denial of probation, concluding that the victim impact statement contained unreliable hearsay. *Id.* at 5. After excluding the unreliable hearsay in the victim impact statement from consideration of its de novo review of the trial court's sentence, this court concluded that none of the factors in Tennessee Code Annotated section 40-35-103 applied to the defendant and reversed the denial of probation.[3] Contrary to the defendant's assertion, this case does not establish a due process right to respond to victim impact statements. Instead, it stands for the proposition that consideration of unreliable hearsay may not constitute the sole ground for denying an alternative sentence. *See William Edwin Harris*, 2009 WL 1871919, at *7.

Here, unlike the victim's mother in *Donald Blevins*, the victims testified live at the sentencing hearing. To the extent that the defendant may be arguing that he did not receive the opportunity to rebut the written victim impact statements, such an argument is waived. The defendant informed the trial court that he received the victim impact statements fewer than ten days before the sentencing hearing. However, he did not request a continuance or object when the victim impact statements were entered into evidence. *See* Tenn. R. App. P. 36(a); *Moss*, 13 S.W.3d at 387 (concluding that when the defendant did not receive the victim impact statements until the day of the sentencing hearing and trial counsel did not object or request a continuance, "any issue predicated upon the timeliness of the report [was]

---

[3] The offense in *Donald Blevins* was committed before the 2005 amendment to Tennessee Code Annotated section 40-35-102(6) took effect, and the defendant was sentenced under the 2003 version of the sentencing act, which provided that "an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id.* at *4 (citing T.C.A. § 40-35-102(6)). Tennessee Code Annotated section 40-35-103 provides the factors to consider in determining what constitutes "evidence to the contrary." *Id.* (citing T.C.A. § 40-35-103)).

waived.").

Further, we conclude that even if the trial court erred in prohibiting cross-examination of the victims, such error was harmless because it did not affect the outcome of the case. The victims' testimony consisted primarily of a recitation of their victim impact statements, which we previously stated were properly admitted into evidence. Additionally, the testimony did not serve as the sole basis for the imposition of the defendant's sentence. The trial court noted that consideration of victim two's victim impact statement did not increase the length of the defendant's sentence. The court observed that the victims testified to information that the court "had already gleaned from the trial" and that the testimony functioned primarily to "further cement[]" the victims' testimony at trial. Finally, as we will explain below, the trial court did not abuse its discretion in imposing a within-range sentence for the defendant. He is not entitled to any relief as to this claim.

## IV. Sentencing

The defendant argues that the trial court erred in imposing consecutive sentences.[4] Specifically, he contends that consecutive sentences were improper because multiple convictions of a sexual offense against a minor do not alone mandate consecutive sentencing, and he did not satisfy the aggravating criteria in Tennessee Code Annotated section 40-35-115(b)(5).

A trial court has the ability to impose consecutive sentences if it finds by a preponderance of the evidence that the defendant falls into one of seven categories, including that "the defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims." T.C.A. § 40-35-115(b)(5). A trial court's decision to impose consecutive sentencing is also reviewed under an abuse of discretion standard with a presumption of reasonableness. *State v. Pollard*, S.W.3d 851, 859 (Tenn. 2013). So long as the "trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable, and absent an abuse of discretion, upheld on appeal." *Id.* at 862.

---

[4] In his brief, the defendant contends that the trial court placed too much emphasis on enhancement factor 14, but he concedes that the misapplication of an enhancement factor does not validate an otherwise in-range sentence. The appropriate range for a Range I, standard offender convicted of a Class B felony is eight to twelve years. The defendant's sentences of twelve and ten years fall within that range. Therefore, we focus our analysis only on whether the trial court properly imposed consecutive sentences.

The court considered the aggravating factors surrounding the defendant's convictions for a crime involving the sexual abuse of a minor. The court first addressed the relationship between the victims and the defendant, finding that victim one was the defendant's biological daughter and that victim two was "the emotional daughter" of the defendant. The court noted that the victims "suffered as much from the break of the relationship [with the defendant] as from the actual acts that were--were committed against them." The court found that the defendant's undetected sexual activity occurred for a period of one and a half months, a period the court noted was "not terribly long." The court noted that the victims' suffering began only when the defendant was discovered videotaping them, and although noting that the degree of the victims' suffering was not lessened, found that the length of the undetected activity did not carry much weight as an aggravating factor. The court found that the nature and scope of the acts were not very aggravating because the defendant limited his conduct to videotaping, rather than physically touching, the victims. The court found that the residual physical and mental damage to the victims was extensive based upon both the testimony at trial and the victims' impact statements. The court found that consecutive sentencing was appropriate based upon the defendant's relationship to the victims and the extent of the residual damage that the defendant's actions caused to the victims.

The defendant cites to several cases, including *State v. Everett Russ*, No. W2012-00461-CCA-R3-CD, 2013 WL 6500152 (Tenn. Crim. App. Dec. 9, 2013), *app. granted* (Tenn. May 15, 2014), for the proposition that the existence of only one aggravating factor is insufficient to justify the imposition of consecutive sentences. In *Everett Russ*, this court examined whether consecutive sentences for the defendant's convictions for aggravated sexual battery were appropriate. *Id.* at *1. The trial court imposed consecutive sentencing, finding that the nature of the relationship between the defendant and the victim and the residual physical and mental damage of the victim were aggravating factors making consecutive sentencing appropriate. *Id.* at *5. The trial court relied on the expert testimony and report of a clinical social worker to find that residual physical and mental damage existed. *Id.* This court found that the testimony of the clinical social worker "was less than certain" and that "[t]he record [did] not support the trial court's finding of residual harm based on [the clinical social worker's] testimony." *Id.* at *6. The court concluded that the only applicable aggravating factor was the relationship between the defendant and the victim, and therefore that the trial court abused its discretion in imposing consecutive sentencing. *Id.* However, on May 15, 2014, our supreme court remanded the case for consideration in light of *State v. Pollard*, and on July 14, 2014, six days after oral arguments were heard in this case, this court filed an opinion affirming the defendant's consecutive sentences. *State v. Everett Russ*, No. W2012-00461-CCA-R3-CD, 2014 WL 3511051, at *4 (Tenn. Crim. App. July 14, 2014). The court stated that "[a]lthough the testimony of the clinical social worker was less than certain, we will not second-guess a trial court's weighing of the

evidence." *Id.* The court concluded that "[t]he trial court provided adequate reasons on the record for imposing consecutive sentences, and the determination [was] supported by the record." *Id.*

We conclude that the trial court did not abuse its discretion in imposing consecutive sentences. Not all aggravating factors must be present in order for the trial court to impose consecutive sentences. *State v. Doane*, 393 S.W.3d 721, 738 (Tenn. Crim. App. 2011). Even if not all of the aggravating circumstances apply, consecutive sentencing may be appropriate if other aggravating factors have been established and carry sufficient weight. *See id.; State v. Everett Russ*, 2014 WL 3511051, at *4. Although the span of undetected activity was "not terribly long" and the nature and scope of the acts were not great, the trial court found that consecutive sentences were appropriate based upon the defendant's relationship to the victims and the residual physical and mental damage to the victims. The defendant created eleven videos over a length of time, altering the camera angles to maximize the number of nude images he captured of the unsuspecting victims. He perpetrated these acts against his own child and a child who regarded him as a father-figure, and both victims testified to mental anguish caused by the crimes. The trial court properly articulated the reasons for ordering consecutive sentencing, and these reasons are supported by the record. Accordingly, the defendant is not entitled to any relief as to this issue.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE

19